Ladies and gentlemen, please rise. This court is now in session. Please be seated. May the clerk call the case. 325-0108, Samantha Olumi v. Karen and her husband Chase Olumi v. Oswego Community Unit School District 308 Oswego Community Unit School District 308 Board of Education and Southridge Home and School Organization by a sworn amendment. Mr. Tober, you may proceed. Good morning. Justice Peterson, Justice Brennan, Justice Davenport, may it please the court, my name is Cameron Tober. I represent plaintiff appellant in this matter, Samantha Olumi, as parent and next friend of her minor son, Chase Olumi. This is a case about a hazardous recreational activity occurring on school property during school hours organized by the Oswego defendants, namely the employees of the school as well as the parents who are involved with the Southbury Home and School Organization. To set the scene, it was Chase Olumi's second or third to last day of second grade. At the school on this particular day, field day activities were organized, and as part of those activities, a large inflatable bouncy or jumpy slide was included and provided to the students to use. During the activities and during the festivities, a race was organized between students on this slide, a chaotic race to go up and over the slide in a quick manner, allowing for what eventually occurred to Chase, a collision between multiple students, including himself, sending him falling from the slide and fracturing his arm. Chase had previously fractured his arm in November of 2022 and was in the healing process for that initial injury. After this incident, he refractured the same arm and was required to get surgery. This case was brought in the Circuit Court of Brooke County. The plaintiffs pled negligence and Wolf v. Watten counts to the Oswego defendant appellees here before the court. The issue before the court, the primary issue, is the specifically applicable immunity of Section 3-109, the hazardous recreational activity immunity versus the more generalized immunity under the supervision immunity of 3-108. And luckily for our benefit, pursuant to the Supreme Court precedent of Murray, which I think in this case mandates a thorough review of the analysis of the Supreme Court in Murray, as it's been followed subsequently and endorsed again by the Supreme Court after Murray and followed by the appellate courts thereafter. And that case stands for the proposition that when looking to immunity statutes, the more specifically applicable immunity governs and the plaintiff is entitled to the exceptions to whatever that immunity is. And this can go both ways, to the benefit of defendants, to the benefit of plaintiffs. In this case, the facts of the incident as pled by the plaintiff, namely a chaotic race between multiple children participants on a large, jumpy, inflatable slide or bouncy inflatable slide is a hazardous recreational activity as defined by the statute. The statute gives a very explicit definition. And then it goes on to give a number of examples of what a hazardous recreational activity is. Including in those examples, trampolining, which was an issue in the Murray case. Multiple references to racing, animal racing, bike racing, motor vehicle racing, things of that nature. Rock wall climbing, things from heights, including body contact sports. All of these examples also point to the facts of our case where we have a race. We have children going up over an inflatable slide at heights on a bouncy slide occurring in rapid sequence. In a chaotic scene with children who are excited and happy to do this, all organized by the Oswego defendants here. For those reasons, and pursuant to the Murray precedent, as well as its project, the more specific immunity of section 3-109 applies, which allows for an exception for two different things explicit in the statute and a plain reading of the statute. Can I ask you a quick question? When you say 109 applies, that presumes a court has decided that this is a hazardous activity, recreational activity. It only applies if that first, step one is, is this a hazardous recreational activity? If the answer is yes, then it's 109. If the answer is no, then you're back to 108. That's my understanding of the application of the precedence. Yes, Your Honor. In this case, the court didn't say. Is that accurate? That's correct. And I would point, Your Honor, to the original motion which was ruled upon and granted did not include section 3-109. It only moved upon 3-108 under the generalized supervision immunity. That motion was granted with prejudice for all of plaintiff's negligence counts. And this is a fair statement, though. I agree. Their motion didn't even cite 109. It didn't address it. But when you raised it for your client or your firm, it did get addressed. In other words, you argued it. They argued against it. They made the argument that this is all supervision anyway, so it doesn't matter which section you're under. But it did at least get discussed, even though it wasn't cited in the motion to dismiss. I do agree it was discussed and raised by myself in the response. However, it was certainly not ruled upon. There's no record indicating the specific immunity provision the ruling was rendered under. You lead me to another question. There's no report of proceedings. Did the court ever at least come out and say anything verbally, just that written word that doesn't say much of anything? That's correct, Your Honor. At least to the best of my recollection, there was no discussion as to the specific immunity or any discussion clarifying the ruling whatsoever, just a dismissal with prejudice. And the court did not allow me to replead, which I also raised in my response brief. Let me ask a related question. In terms of the complaint and the type of negligence that's fairly set forth in it, I understand the focus on the 108 because I don't see the word guard or the word warn anywhere in that complaint. If I was going to reasonably assert that it was a hazardous activity and it was a failure to guard and warn, I might include that language in my complaint, but I don't see those words in the complaint. Am I wrong? Your Honor, you're not wrong. I'd point, Your Honor, in effect, this is my initial pleading. I was not allowed to replead. But secondly, the allegations of the complaint sounded failure to guard or warn, in that there was no indication to parents, specifically to Ms. Samantha Alluming, of there being an inflatable, nor was there any indication of there being a race, nor was there any opportunity in my complaint states placing a mat or any sort of spotter, this being a chaotic scene as indicated by the affidavit and the complaint itself. To address, Your Honor, directly, there's no specific in this complaint to guard or warn. It was pled very broadly. I didn't know exactly which immunities would be invoked. And, in fact, the defense did invoke and affirmed a defense of about nine of them, which I think is commonplace. However, I would have appreciated the opportunity to replead if there was a narrow ruling on this issue, so that I could specifically, if that's the way that Judge Rickman wanted to rule, specifically address those items in that cause of action. As to the allegations of the complaint, and the next thing I want to point Your Honor to, or Your Honors to, is the court made a very explicit ruling that, in our view, is incredibly premature, that the Southbury Home and School Organization was a public entity entitled to protections of the immunity. Specifically, there was no written discovery that occurred at this juncture, no depositions that occurred at this juncture. It was on the four corners of the pleadings. The only other substantive evidentiary basis that was included was the plaintiff's affidavit, which was attached to the response, as well as two unverified documents attached for the first time to the reply brief on this motion to dismiss issue. One of those documents was, I should say, neither of them were verified by affidavit or otherwise, but one of those documents was a policy of the school district, and if you look to the record, you'll see it wasn't adopted until about 10 days, coincidentally, after this incident. So, for the court to make the ruling that the Southbury Home and School Organization is in fact a public entity at that juncture was entirely premature in our view. The case law outlines that there are a number of factors to consider and to look to whether or not that entity is doing a public business, which is, I think, the proper consideration, but only after a chance to develop the record and discovery. We know in this case that there's no public funding associated with the home and school organization. Now, that's not dispositive for you. I do agree with that, Your Honor, but it is one factor that courts look to and address in their opinions. However, the bigger issue that I have is there's agency implications all over the place in this case in that we know that there were parents involved at the field day organizing certain activities, and we know there were teachers involved at the field day. I don't know if the parents are there at the behest of organization, of the school organization, or of the home and school organization, excuse me, or if it's the teachers explicitly that were the ones organizing this race. I know they were both involved, but I don't know the exact specifics of who was doing what in the moments that that race was put on, who exactly put it on. And I think it's determinative if they are not, in fact, a public entity. They would be subject to the regular standards of negligence of private parties. So, you know, in my view, that ruling was entirely premature based on the record at that point in time, especially, you know, in light of the fact these negligence counts were dismissed with prejudice, without an opportunity to replete. The last thing, Your Honor, that I really want to address and dive into today is the- One question, I apologize. When you made the request to replete, did you attach to the request an amended complaint? I did not, Your Honor. As to the methodology of the defense here, it is circular. In essence, it endorses the Johnson approach, which was disavowed explicitly by the Murray case. To sum it up, the approach of the defendant that believes is that the clause of Section 3-109, pursuant to liability which would otherwise exist, that citation would take you back to 3-108, which is the supervision immunity. That is expressed, that is the exact approach that the Supreme Court in Murray looked at from the Johnson court and said that is not permissible. The way that this is applied is the determination is made as to the most specifically applicable immunity clause. That provision governs what the defendant at least here is submitting is a layering of immunities. Even if it is 3-109, it goes back to 3-108 with the exception for Wolfell and Watten conduct. It is simply not the approach that has been endorsed by Murray or again reasserted by the Supreme Court in Greece, as I included in my brief. That has not been the approach of how courts apply the Immunity Act. The one specific immunity is the one that has precedent, that governs, not a stacking or layering of these multiple clauses. As to Section 3-109, the Hazardous Recreational Activity Immunity, this statute is very specific as to the elements that need to be sort of put forth under this type of a failure to guard or warn claim at common law, but it also includes specifically two different exceptions, a Wolfell and Watten exception and this guard or warn exception which we are discussing. I have a question. In your brief, you repeatedly refer to it as protect or warn. You substitute protected for guard often. I'm just curious and I'll acknowledge warn is not defined anywhere. It's this word that's problematic, frankly, but where did you get, where did you decide, what source did you rely on to pick the word protect? I do apologize. I should have been more exact with the wording. In my view, I've seen some case law out there that use the terms interchangeably. I don't have that citation for you. Different dictionaries use different words, but they all kind of seem to mean the same thing, but it certainly seems like it's vague. And you acknowledge that Murray may have said what you're arguing today, that there are two separate exceptions in 109, Wolfell and Watten, we're all familiar with that, and guard and warn, but then in the end, after they say there are two separate exceptions, they say we find that this issue was not fully briefed and argued by the parties. So it was raised and they acknowledge it, but because it wasn't fully briefed, they declined to address whether 109C1, which is guard and warn, is applicable. So they did kind of a dodge at the end. So I couldn't find any research that explained what does guard and warn mean in this context. Is that a fair assessment of the case law? It is. It's relatively novel. I will agree that the Murray court ruled on separate grounds, not specific to 109C1. However, they ruled on 109 being the applicable statute, and that is the precedent that was set in terms of applying these issues. I will point out that this is still the amendment that I'm sure will be brought up by defendant was not to Section 3-109. At that time when Murray was considered, it still did contain the two specific exceptions for first, failure to guard and warn, and second, for willful and wanton conduct. Any other read of this statute looking to this statute through the lens of the defendant appellate would render the entirety of this statute null, in that there would be no legal effect, there would be no legal consequence for there ever being an activity deemed a hazardous recreational activity. The legislature has gone through the trouble of giving the definition of what it is and then examples of what they could be. And none of that would matter if it went just back to the supervision immunity provision. None of that would matter if it was only willful and wanton conduct. It's obvious they're creating a second exception here to this immunity. The last thing that I'm really going to mention. I don't want to interrupt you because your time is up. Any additional questions? I have no questions. I do. I have one question. Thank you. Can you explain why you chose not to reply to the issue that was raised in the appellate's brief about Southbury being a public entity? I mean, they went to a detailed analysis of that it was a public entity, and you did not reply to that argument. Your Honor, the argument in the appellate's brief, you're talking about in their response to my initial brief in front of this court.  In my view, looking to what the circuit court, the trial court had in front of them, there was just not enough facts in the record that they'd met their burden of pleading and proving that issue. Regardless of the case law and the elements of the case law pertaining to a local public entity and what should be considered and those things that fit within that definition. In this case, what was in front of the trial court was simply the two attachments to the reply brief, not a single deposition, no written discovery, and they were unverified attachments, one of which was not even in effect or properly dated at the time of this accident. And so for all those reasons, I addressed the… Did you object to the attachments at the time? I did, Your Honor. I don't recall if it in writing, but I absolutely did point it out to the trial court. I didn't mean to interrupt. No, that's fine. Thank you, Justice. All right, Mr. Trouble, you have an opportunity to reply. Mr. Neelan. Good morning, Your Honors. May it please the Court, my name is Lance Neelan. I represent the defendant appellees, the Oswego Community Unit School District 308, Oswego Community Unit School District 308 Board of Education, and the Southbury Home and School Organization. And, you know, I really just want to start and clear up some confusing confusion. A lot of appellants' arguments today were about whether or not this was, it has this recreational activity, but the reality is that it doesn't matter. And that's what we said at all points. We said it in a reply for our motion to dismiss. We said it at oral argument. Then we said it in our response to plaintiff's motion to reconsider. The distinction is irrelevant at this point in the case. The standard for liability under either of these statutes that you can pick is willful and wanton conduct. And that's because you characterized the complaint as only alleging negligent supervision. We characterized the complaint as alleging a failure to supervise. He did allege willful and wanton conduct, which we answered that allegation. And, in fact, we asserted 3109 as an affirmative defense to that. We're not saying that those allegations should be dismissed. Those still exist today. They're staying as we're defending this appeal. But what appellant is asking you to do is to use Section 3109 as a sword instead of a shield to apply a broader scope of liability on these public entities, which is not what the Tort Amendment Act in general is for, and it is not what the Section 3109 is for. And I just want to clarify before I move on. This is not what the court ruled. The court did not rule either orally in writing at any point that Section 3108 applies only and 3109 does not apply. That was not the ruling. There is nothing in any record. And if there's a transcript out there somewhere, it would not say that. There's been no ruling on that. We made no argument for that either. That's not what occurred. But you didn't allege nowhere in your motion to dismiss is 109 even mentioned. In our initial motion to dismiss, we said these are failure-to-supervise claims. We're immune from evidence under Section 3108. As you pointed out, Justice Peterson, I believe it was you, there's no hazardous claim that these are hazardous activities in the complaint itself. Once we made the motion to dismiss, their response said, well, these are hazardous recreational activities. At that point, we addressed it and we said, well, even if they are, it's still the same statute. So the statute itself was discussed, but whether or not these were hazardous is not relevant. And, you know, before I talk about the Murray case, I do just want to get into a little bit of case law or statutory interpretation of Section 3109. You know, the statute itself says, and this is a quote from the statute, nothing in this subsection creates a duty of care or basis of liability for personal injury. The case law we cited in our brief, First Midwest versus Britain, says 3109 does not impose an independent duty. And this is really just well-established law. There are many, many, many cases in Illinois that cite the Tort Immunity Act that say that the Tort Immunity Act is not meant to create duties or create liability. But that is what the plaintiff is asking you to do. They're trying to say this would be a willful and wanton standard under other provisions of the Tort Immunity Act. You should use this one now to create a negligence duty. And that's simply not what this is for. And, you know. Isn't it that everyone always, including school districts, have a duty to not be negligent? And the statute actually provides the shield to say, well, because it's government, even though there's a duty, then you have the shield of this immunity. So that's my understanding of the analysis of that. To some extent, there's the general common law duty of negligence, and then the Tort Immunity Act, of course, creates additional immunities. And then there's also the school code, which says the same thing. It says that teachers are in loco parentis. They're in the place of the parent. They're only liable for willful and wanton conduct. That was also discussed in Section 2424 of the school code, but it's the same standard. You know, and if we really just kind of peel back what plaintiff is saying here, he's talking about a failure to guard or warn. That is not what these claims are. We did assert that on motion to dismiss. We said these are not failure to guard or warn claims. These claims are clearly failure to supervise claims, and therefore the standard is willful and wanton conduct. And if we look at the Murray case that the appellant is talking about today, it did not rule what he's saying that it ruled. The Murray case did not permit liability for negligent conduct. It did not state that the plaintiff in that case, as you pointed out, were making a claim under 309C1. In fact, they specifically said that's not an issue that they're addressing in that case. Those were failure to supervise claims. Right, only because it wasn't brief. It wasn't brief, but fully brief. I don't know what that means. Apparently it was raised and it must have been discussed, but not enough for the Supreme Court to say we should address it. Potentially, yeah. They didn't address it. But the reality is that the statute in Murray at the time, 3108, provided absolute amenity for failure to supervise. School districts and teachers could not be liable for claims based on failure to supervise regardless, whereas 3109 allowed for willful and wanton conduct. Obviously that statute has now been amended. 3108 now allows for willful and wanton conduct. So the distinction in Murray where it was imperative in that case because it allowed the case to remain in court at all, is not relevant here. The immunity is willful and wanton no matter what. If Murray was decided today, that would be the ruling. So this distinction that Appelli keeps bringing up that Murray made is just, or Appellant, excuse me, is simply not what the court ruled. And to address the failure to guard or warn briefly, and honestly it wasn't really briefed much in this case, that language you were discussing, failure to guard or warn, comes a lot from case law under Section 3102 of the Tort Immunity Act. It talks about the conditions of public property, and the case law talks about whether the public entity has a duty to guard or warn against it to notify the person of like a pothole in a field or something like that. There's also 3106 which talks about the same failure to guard or warn, which is about immunity on recreational property, which this would be recreational property, and that's the same standard. It's willful and wanton conduct. So even if these were failure to guard or warn claims, which they're not, which was briefed and decided, it would still go back to this is recreational property. The standard for liability would be willful and wanton under 3109, 3106. Unless it was a hazardous. No, Your Honor. Even if it's a hazardous activity. So your position is even if it was a hazardous activity, I'm paraphrasing, it still has to be willful and wanton? In this specific set of facts, yes. Because if we look at the standard that would otherwise exist, which is what the statute says, 3109c says, 3109 says public entities are not liable for injuries that occur when you're engaged in hazardous recreational activity, except Part C says here's some exceptions for liability that would otherwise exist for these things, a failure to guard or warn, or willful and wanton conduct. Here we assert that the liability that otherwise exists here is willful and wanton conduct. In this specific claim, it doesn't make the statute a nullity. There's many other cases like kayaking or trampolining was an example, or things that horseback riding, or some of the cases someone's in a public park horseback riding and they fall and they get injured. Those are the type of things that liability could potentially exist, depending if it's a condition of the property. But here, the liability, hazardous or not, is willful and wanton conduct. I have a question. What is spelunking? Cave diving, I think. I didn't know that. That's an example. I was just being funny. But to go down the line, if someone gets injured spelunking in a public cave, I don't know if that exists, but if it does, and it's because of the condition of the property, that public entity could potentially be liable for negligent conduct because it's a hazardous recreational activity. Here, where they're injured based on the failure to supervise students at school or the use of recreational property where the standard is willful and wanton under those statutes, whether it's hazardous recreational activity or not is not relevant to this specific claim, not to all claims of hazardous recreational activity. Because you're saying every obligation in the complaint falls under the supervision definition. That's correct. And I believe that appellate said that today, that if these were not hazardous recreational activities, 3108 would apply. We agree. And the standard of liability is willful and wanton conduct, regardless of which of these immunities apply to this specific claim. I want to turn briefly to the public entity, the HSO issue. You're correct, Justice Davenport. Appellant did not reply to this point. But the HSO, it's the South Barrett Homeless School Organization. It's the PTA. It's not called that, but that's what it is. It's the Parent Teacher Association of this school. I think we all know what a PTA is. If we look at the Tort Amenity Act statute for what could be a public entity, it's a not-for-profit business, clearly that's what this is. And then they have to do a couple different things that are discussed in the cases, provide a traditional government service. This is where we attach the bylaws of the HSO that say it exists to enhance the quality of education of the students. That's not really being disputed. I don't believe Appellant's saying that that is not what this entity is for. It's the PTA. Certainly, providing education is a government-like service. Every case law that exists says that. The government funding is a second aspect. You are correct that this is not a government-funded entity. It's funded by donations. But the cases, Carol Fried-Paddock is the main one, says that courts should not place too much emphasis on government funding, and entities can be public. This is a quote from that case, irrespective of the degree of government funding. And then the third factor is degree of government oversight. Again, this is where we attach a provision from the bylaws of the school district. Again, this is not in dispute. It's from the district's website. It just says that the Holman School Organization must adhere to district and board policies, and it exists with the consent of the Board of Education. That's the only thing that these statutes said. Which portion of what you attached was after the incident? The portion, I believe it's this portion. I'm not looking at it right now, but it gets updated yearly. So it's just a yearly update. The prior version is, I believe, exactly the same. But the board policy is not in the record. The prior version is not what we attached to the record. We attached the current version. We cited to it with a link. We also attached it. But it just gets updated every single year kind of automatically. But the only reason we attached those was to show that the PTA, the HSO, is overseen by the Board of Education. It exists with the consent of the Board of Education. The principal is on the board of the HSO, at least one teacher from the school. That's a lot of government oversight. So we would say that makes it clear that this is a public entity. And I would like to address briefly the motion to dismiss that we filed. I know that we're here now, but we did file a motion to dismiss this appeal. We said at the time that plaintiff asked for this 304A language, that it wasn't appropriate. The district court allowed it. Then when this appeal was filed, we went in front of the district court for a status hearing. We again said, you know, Your Honor, I don't think 304A was appropriate language here. This was not a final and appealable issue. And the judge said, this is paraphrasing, but essentially, well, I've already granted it. But, you know, we've made this argument at all points. This was not a final and appealable matter. It did not resolve the case against any defendant. The case is still pending. It's really just sitting there doing nothing. When this appeal ends, regardless of the outcome, we're going to go back to the district court. We're going to start litigation. We're going to take depositions. We're going to do all those things. And if you look at the factors we cited, the Guyer case provides five factors. There's not really one specific dispositive one. But if you look at the five factors of whether a ruling should be considered final and appealable, it's number one is the relationship between the claims. And the court said that if the claims are not separate, excuse me, if the factual overlap of the claims are not separate, appeal must be deferred until the remaining claims are resolved. All these claims are the exact same set of facts. There's 100% factual overlap. Clearly, that would weigh against allowing an appeal. The possibility for the need, that need for review may be mooted. As I already said, we haven't even started discovery. It's been over a year of this appeal now. We have to exchange documents, take depositions, do all of those things. There could be other dispositive rulings, a judgment. Would you agree that the 304A language was appropriate at least as it relates to the PTA? Yes, and our motion to dismiss was not to that issue. But, you know, obviously this could be mooted. As we all know, we could settle. We could win a trial. They could win a trial. Lots of things might moot this appeal, so that factor would go against allowing it now. Whether the court might have to review the issue again, really this is the same thing. We're so early as far as facts being developed here. We could end up back here in front of this court as more facts get developed. We really don't know. The possibility of a set-off. You know, there are two non-public entity defendants in this case, Bounce City Party and Bounce City Slide Rentals, I think are what they're called. They have the negligence standard. They've answered the complaint. Any judgment against them or settlement with them would definitely result in a set-off. So that would, again, go against allowing this appeal now. And then miscellaneous matters that talk about cost and delay. You know, not to beat a dead horse too much, but this has been a significant delay. You know, we're over a year. We're doing nothing when the case is causing nothing but delay. And certainly all anyone's doing is spending time and attorney's fees defending this appeal. And then we're going to go back to the court and start defending the case. So I would say that all of those issues go against allowing this appeal, and it should be dismissed under those grounds as well. So unless there are any more questions, I will, well, not reserve the remaining of my time, but I will thank you. I have no questions. Thank you. Thank you. Mr. Tober, reply. Thank you, Your Honors. First, I'd like to remind the court as to the burden on the defense, raising immunity to plead and prove that immunity. Counsel now is arguing that even if Section 3-109 does apply, it's still recreational property immunity. Again, it's this layering approach by the defense to pick and choose the immunity that best fits its ends at that moment in time. I'll remind the court that the defense initial motion to dismiss did not move on those grounds, recreational property, and the case law around that immunity turns on the exact nature of the property that is at issue, its usage, what were its intended uses, its permitted users, those sorts of things. How often is recreation done there? None of that has been developed here in this case in the record. None of that has been substantiated in any form or fashion. So in our view, the argument says that recreational property immunity should be disregarded out of hand for that reason alone as being entirely premature. I'd like to point out a couple of things. Counsel mentioned that I am wrong as to the judge's ruling as if it is fact that Section 3-109 was part of Judge Rickman's ruling at the trial court level. There is zero basis in the record to believe that to be the case. There's not any reference in the initial motion. There's not any reference in the order. The only thing that was moved upon, as is the burden of the defense to raise the affirmative defense of immunity and plead and prove it, was the supervision immunity. So we're back to supervision. The issue here, Judge, is the application of the immunity statute. That is the precedent from Murray. That is the precedent that's been passed down. And the courts have ruled that the more specifically applicable immunity governs. And in this case, based off of the facts that I've pled in plaintiff's view, as well as in light of my request to re-plead in front of the trial court, which was overlooked and not addressed in any form or fashion, then that should have been permitted. And in my view, the ruling in its entirety, especially it being with prejudice, was simply premature. Next, I want to address counsel's assertion that Murray did not hold that 3-109 applies. That is absolutely incorrect. We are not saying that Murray held negligence was the standard. That's not what we're arguing. We are arguing that Murray held 3-109 applied. Why? Because it looked to the facts of the activity, the mini trampoline and the tumbling class occurring at a school, on school property. The facts of that activity fit the more specifically applicable immunity of Section 3-109. And that's the analysis that has been the precedent stemming from the Murray case. We saw it followed in Reese and many others. And that's what should be done here. Viewing the plaintiff's complaint and the facts pled, as well as the affidavit of that complaint, this being a chaotic race as included in the complaint, in the light most favorable to the non-moving, you can see how this would be. And the inferences are you have second-grade children bobbing their heads, exciting to go up and over this inflatable slide, landing on top of each other, hitting each other off of the slide. This is a chaotic scene. They're excited to nearly be done with school. This is the case that we've pled based on the facts that are here for the court to look to in our complaint. Counsel also references the school code. I just want to note that one of the cases actually cited by counsel in their brief explicitly held that where, excuse me, I'll find the case name. The Hendrick versus Libertyville case explicitly held that where there's a conflict between the school code and the immunity statute, the immunity statute prevails. And so in that context, the school's code arguments, you know, I just want to address it briefly, and then I'll move on. In some, though, this is a case where the ruling was entirely premature. The standard by which the plaintiff appellate now has to plead and prove her case being willful in wants and conduct is significantly higher than it previously would be under a negligence standard. We have to prove some sort of an element near notice of this being a dangerous condition for there to be conscious disregard or an utter indifference to the risk that this posed to children. It causes a substantial burden in the litigation getting resolved and the litigation moving forward, as well as its prejudice as to the rights of the plaintiff in proving her case at trial. And it's absolutely a different case in totality as compared to if 3-109 applies and the exceptions to 3-109 apply, which are, you know, to guard or warn. Mr. Tober, what do you say to the argument that the 304A finding was not appropriate given the other claims that continued, notwithstanding the court's dismissal of prejudice? Absolutely. 3-104A is specific to appeals where some of the claims continue and some of the claims do not. Right, but sometimes when what remains is so factually intertwined, we say that it wasn't appropriate. Understood. Your Honor, I cited to the Kravitsky case in my brief, which outlined specifically on this issue, where there was a negligence and a willful and wanton count, the same underlying facts. The court in that case, the appellate court, ruled that they're sufficiently distinct, that the jurisdiction was proper. And so from the trial court's view of that precedent, the binding precedent above it on this issue, that is him, the trial court, following that binding precedent, that these are distinct enough issues under this exact precedent for a jurisdiction to be conferred. And I point, Your Honor, as well to I believe the standard is an abuse of discretion standard on that issue. I hope that was my last question. Nothing further. Thank you. Thank you very much. The court thanks both sides for spirited argument. We will take the matter under advisement and render a decision in due course.